UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Case No. 25-298 (BAH) |
| JACOB SAMUEL WINKLER, | Judge Beryl A. Howell |
| Defendant. | |

## ORDER REGARDING TRIAL PROCEDURES

The Standing Order for Criminal Cases, **ECF No. 9**, already entered in this matter is supplemented as follows:

1. **Trial Schedule**. The trial will begin with jury selection on **Monday, January 12, 2026, at 9:30 a.m. in Courtroom 26A**, and will proceed promptly to opening statements after the jury is empaneled. Unless the parties are otherwise notified, the Court will convene the evidentiary portion of the trial from **9:30 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, **Monday through Friday**, with a brief mid-morning and mid-afternoon recess. Counsel should be prepared to deliver their opening statements promptly after the jury has been selected, sworn-in, and preliminary instructions have been delivered by the Court.
    a. Opening statements shall not exceed 20 minutes per party. Any exhibits, demonstratives, charts, or summaries to be used in opening or closing statements must be shared with opposing counsel by **Monday, January 5, 2026**, and if any party objects, such objections must be submitted to the Court by **Wednesday, January 7, 2026, at 2:00 PM**, for resolution prior to use.
    b. Immediately after opening statements, the government must be prepared to call its first witness.
    c. Unless otherwise instructed by the Court, counsel and defendant should be present in the courtroom each morning at least fifteen minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid making the jury wait.
    d. To accommodate hearings in other pending matters, the start of the trial may be slightly delayed, if the trial is still ongoing, on **January 16, 2025.**

2. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
    a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
    b. request permission before approaching a testifying witness;
    c. stand when raising objections;
    d. remain seated when the jury is entering or leaving the courtroom;

  e. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**.  An outline of the jury selection process to be used in this criminal matter is set forth in **Attachment A** to this Order.

4. **Technical Equipment**. Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. **Statement of the Case**.  The Court intends to describe the case to the venire panel as follows:

   > **This is a criminal case.  The government has charged defendant JACOB WINKLER with Aiming a Laser Pointer at an Aircraft. The government alleges that, on September 20, 2025, in the 1600 block of Constitution Avenue, NW, Washington, D.C., Mr. Winkler pointed the beam of a laser pointer in the direction of the Marine One helicopter.  Mr. Winkler asserts that he is innocent of the charge.**

6. ***Voir Dire* Questions**.  The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment B** to this order.

7. **Motions or Objections During Trial**.
   a. **No evidentiary objections shall be argued in the presence of the jury.** Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase.  To protect the record for appellate review, counsel may explain or amplify an objection on the record outside the hearing of the jury or after the jury has been excused.  If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may request a bench conference.

   b. **Bench Conferences should be requested only when necessary** because counsel intends to refer to issues requiring pre-clearance (*e.g.*, anticipated questions or testimony may refer to missing witness or potentially inflammatory subject matter).  Counsel should not expect requests for a bench conference to be routinely granted and should, instead, consider whether the issue counsel wishes to address at the bench can wait until the jury is excused for a recess.

8. **Witness Examination**.
   a. A party calling a witness must arrange for the witness's presence until cross-examination is completed.  Failure to have a witness present for cross-examination is grounds for striking the witness's testimony.  Except in extraordinary circumstances, the trial will not be recessed due to the unavailability of a witness.

   b. After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated.  For a defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4-7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

9. **Jury Instructions**.  If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the request may be considered waived.  If a party would like an instruction included in the Court's final instructions to the jury, that party bears the responsibility of providing the text requested prior to the charging conference for discussion at the charging conference.

10. **Juror Confidentiality**.  The names and personal information of prospective and selected jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except upon order of the Court.  *See* D.D.C. LOCAL CRIM. R. 24.1(b); D.D.C. JURY SELECTION PLAN ¶ 18.1 (updated May 17, 2022), available at https://www.dcd.uscourts.gov/jury-selections.  Counsel and parties are cautioned that violation of this directive may result in contempt proceedings.

**Date:** December 17, 2025

                                                  **BERYL A. HOWELL**
                                                  United States District Court Judge

**ATTACHMENT A TO TRIAL ORDER**
**Jury Selection Process**

1. <u>Number of Jurors Seated</u>.  As required by the Federal Rules of Criminal Procedure, a unanimous verdict must be returned by a jury of **12** members in criminal trials, absent special circumstances. FED. R. CRIM. P. 23(b) and 31(a).  To provide prudently for the sickness or disability of any juror, **two** alternate jurors will also be selected.  FED. R. CRIM. P. 24(c)(1).

2. <u>Venire Panel</u>.  The number of panelists is computed by totaling the following: the number of jurors to be selected, the number of alternates to be selected, and the number of peremptory challenges. Thus, in this single defendant criminal case, in which the defendant has 10 and the government has 6 peremptory challenges, *see* FED. R. CRIM. P. 24(b)(2), plus each side has 1 challenge with respect to alternates, *see* FED. R. CRIM. P. 24(c)(4)(A), individual *voir dire* will be conducted of a sufficient number of prospective jurors to qualify a venire panel, after excusing panelists for cause, of 32 panelists.

3. <u>Location</u>.  The prospective jurors will be seated in Courtroom 26A by the courtroom deputy clerk in the order in which their names appear on the venire list.  The seating arrangement will start with the first-listed prospective juror being placed in the first row of gallery seats located on the left side of the Courtroom 26A (as viewed from the bench looking toward the rear of the courtroom).  Prospective jurors will be seated in the order listed on the venire list in sequential order from the left wall to the center aisle and, if the left-side gallery is full, then from the right wall to the center aisle.

4. <u>Venire List</u>.  Counsel will be provided with the written list of the summoned prospective jurors ("venire list") that is randomly generated.

5. <u>Preliminary Matters and Administration of Oath</u>.  After the prospective jurors are seated, Judge Howell will give a brief introduction, explaining the importance of jury service and the selection process, and the oath will be administered simultaneously to all prospective jurors in Courtroom 26A.

6. <u>General *Voir Dire* Questions Asked Simultaneously to All Prospective Jurors</u>.  Judge Howell will decide what *voir dire* questions will be asked after consideration of the proposed *voir dire* questions submitted by the parties as part of the Joint Pretrial Statement and any supplemental argument at the pretrial conference.  FED. R. CRIM. P. 24(a).  The prospective jurors will be collectively asked the *voir dire* questions in Courtroom 26A.  The jurors will be instructed to mark on the paper provided by the courtroom deputy clerk the number of any question to which the juror has an affirmative answer to facilitate any follow-up questions.

7. <u>Individual Responses to Questioning</u>.  After the collective *voir dire* questions have been asked, prospective jurors will be reseated outside the courtroom. The venire panel will be instructed not to discuss the case or the *voir dire* questions.  Each prospective juror will then be escorted individually by the courtroom deputy clerk into Courtroom 26A in the order listed on the venire list.  Each prospective juror will be asked follow-up questions about any affirmative response indicated on the paper.  Counsel will have the opportunity to request that Judge Howell ask additional pertinent follow-up questions of individual jurors at this time.  FED. R. CRIM. P. 24(a)(2).

8. <u>Strikes for Cause</u>.  Any motion to strike for cause should be made immediately after the individual questioning of the prospective juror, which motion will be ruled on promptly. Any struck juror will

be excused from the courtroom. When 32 prospective jurors have been qualified, following individual *voir dire* and resolution of strikes for cause, the selection process will proceed immediately to the exercise of preemptory challenges.

9. <u>Peremptory Challenges For Regular Jurors</u>. The 32 qualified prospective jurors will be reseated in Courtroom 26A in the order on the venire list. Parties are permitted to challenge only qualified prospective jurors in the venire. For both regular and alternate jurors, the courtroom deputy clerk will provide the parties with a document upon which they may record their respective peremptory strikes in the order outlined below.

    Peremptory challenges are exercised in **six rounds**: in the **first four rounds**, the government exercises one challenge and the defendant exercises two challenges; in the **next two rounds**, each side exercises one challenge, for a total of 6 challenges for the government and 10 challenges for defendant. In each round, the government will exercise its challenge first. A pass by any side counts as a strike. If the government declines to exercise a challenge on a round, and the defendant also declines to exercise a challenge on that same round, the peremptory challenge process for the twelve-person jury will be deemed completed. The qualified prospective jurors, who have not been stricken, in the order their names appear on the venire list will be the regular jury.

10. <u>Peremptory Challenges For Alternate Jurors</u>. The government may exercise one peremptory challenge as to qualified prospective alternate jurors, followed by the defendant, who may do the same. *See* FED. R. CRIM. P. 24(c)(4).

11. <u>Swearing-In Jury</u>. Following the exercise of any peremptory challenges as to the prospective alternate jurors, the courtroom deputy clerk will ask fourteen remaining qualified prospective jurors to be reseated in the jury box in the order their names appear on the venire list, with the last two jurors serving as the alternates. The jury will not be told the seats of the alternates. The jury will then be sworn-in.

12. <u>*Batson* Challenges</u>. Prospective jurors who were stricken on a peremptory challenge will not be excused until the entire selection process has been completed, including the resolution of any challenges pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Counsel are forewarned that should a *Batson* challenge be found to be meritorious, the remedy may be to impanel any improperly stricken juror on the jury and preclude the party who improperly exercised the strike from excluding that juror. Other remedies to address *Batson* violations are also available, including the imposition of monetary sanctions. Counsel should therefore be mindful of the obligation not to exercise peremptory challenges that seek to exclude jurors based on race or gender.

**ATTACHMENT B TO TRIAL ORDER**
*Voir Dire* **Questions**

1. Based on what I have told you about this case, have you received, heard, or seen any information, from any source, about this case or the defendant **JACOB SAMUEL WINKLER**?

2. The United States is represented in this case by Assistant United States Attorney **JONATHAN HORNOK**, who is being assisted by paralegal specialist, **[TBA]**. PLEASE STAND. Do you know or have you had any contact with these individuals or the U.S. Attorney's Office?

3. The defendant at trial is **JACOB SAMUEL WINKLER**. PLEASE STAND. Do you know or have you had any contact with **JACOB WINKLER**?

4. Mr. Winkler is represented by Assistant Federal Public Defenders **ALEXIS GARDNER** and **UBONG AKPAN**, who are joined at counsel table by paralegal **ROSE WAGNER**. Do you know or have you had any contact with these individuals or the Federal Public Defender's office?

5. During the course of the trial, you may hear testimony from or about a number of people. The attorneys will now identify for you the names of people who may testify or about whom you may hear testimony. Listen carefully and, if you recognize or know any of the people named, please mark your paper beside the **number 5**. The government's counsel may go first, and then defense counsel may list any additional names.

6. Please look around you. Do you know or recognize any other member of the prospective jury panel, any member of the courtroom staff, or me?

7. Do you, a family member, or a friend work in, live in, or frequent the area of the 1600 block of Constitution Avenue NW?

8. The lawyers have predicted that the presentation of evidence in this trial should last about one to two days, but it could run longer. The jury will sit Monday through Friday, generally from 9:30 a.m. to 5:00 p.m., although the starting and ending times may vary. The length of jury deliberations following the presentation of evidence at trial will be determined by the jury itself. Do you have an urgent or extremely important matter to attend to this week, such that you could be faced with a hardship if selected to serve on the jury in this case?

9. Do you have any vision, language, or hearing problems, or any other physical or medical problems, that might interfere with your ability to hear or understand what the witnesses say in this case, to view exhibits and photographs, or to give your full attention to this case?

10. Have you, any close family member or close friend ever studied law or been employed by a lawyer or a law firm, worked in a courthouse, been a paralegal or legal secretary, or performed legal investigative work?

11. Do you have any religious, social, or moral beliefs that would affect your ability to sit in judgment in a criminal case?

12. If you ever served before as a juror at a civil or criminal trial, or on a grand jury, was there anything about your service that might affect your ability to serve fairly and impartially as a juror at this trial?

13. Have you, any member of your family, or any close friend ever been employed by the U.S. military, or a local, state, or federal law enforcement agency or a private security company? For example, law enforcement includes work at a **police department, Federal Bureau of Investigations, sheriff's department, Department of Justice, Drug Enforcement Administration, Marshals Service, Department of Homeland Security, U.S. Customs and Border Patrol, a local jail, a state or federal prison, or the like**; and the military includes the **United States Army, the Navy, the National Guard, the Marine Corps, the Air Force, and the Coast Guard**.

14. Do you, any member of your family, or any close friend belong to a group or organization that is active in law enforcement or crime victim prevention matters? Some examples of such organizations include: **Fraternal Order of Police, Crime Watch, Neighborhood Watch, Crime Stoppers, Orange Hats**, or other organizations, including any groups online, that monitor or discuss neighborhood crime issues.

15. Have you, any member of your family, or any close friend, had an experience with law enforcement that may affect your ability to be fair in this case?

16. Have you, any member of your family, or any close friend ever been the subject of a criminal investigation, accused of criminal conduct, or arrested or prosecuted for a crime?

17. Have you, any member of your family, or any close friend ever been a victim of a crime, a witness to a crime, or testified in court or before a grand jury as a witness to a crime?

18. In this case law enforcement agents and officers will testify. Would you be inclined to give greater or lesser weight to the testimony of a law enforcement agent or officer simply because they are an agent or officer?

19. The prosecution has the burden of proof. This means that the jury cannot return a guilty verdict against a defendant unless the prosecution has proven beyond a reasonable doubt that the defendant is guilty of the crime charged. Would you have any difficulty accepting and applying this legal instruction?

20. Every defendant in a criminal trial is presumed innocent and, therefore, has no obligation to testify or present any evidence in the case. Would you have any difficulty accepting and applying this legal instruction?

21. Do you know of any reason, or has anything occurred to you during this questioning, that might in any way prevent you from following my instructions on the law and being completely fair and impartial as a juror in this case?